SHERROD v CITY OF DETROIT

Docket No. 215243. Submitted November 7, 2000, at Detroit. Decided February 2, 2001, at 9:05 A.M.

Clyde Sherrod, a military veteran and an inspector in the Detroit Police Department, brought an action in the Wayne Circuit Court against the city of Detroit and Detroit Chief of Police Isaiah McKinnon, alleging various claims relating to a three-day job suspension he incurred for neglect of duty. The court, Jeanne Stempien, J., granted partial summary disposition for the plaintiff, ruling that the plaintiff was denied his constitutional right to due process when his suspension was imposed ahead of the hearing he had before the mayor of Detroit, which was conducted pursuant to § 2 of the veterans' preference act, MCL 35.402; MSA 4.1222. A jury awarded nominal damages against the city and the chief of police, and $100,000 in punitive damages against the chief of police. The court denied motions by the defendants for judgment notwithstanding the verdict, a new trial, and remittitur. The defendants appealed.

The Court of Appeals *held*:

Pursuant to § 2 of the veterans' preference act, a municipal employee who is also a veteran may not be removed, transferred, or suspended from any office or employment for any cause enumerated in the section, except after a full hearing before the mayor. A municipal employer's failure to comply with this procedure may in some cases support a due process claim, but not in this case, where the deprivation of the plaintiff's proprietary right to a presuspension hearing was de minimis and not deserving of due process consideration. In the absence of a due process violation, the trial court erred in granting partial summary disposition for the plaintiff.

Reversed.

WHITE, J., concurring, stated that the defendants' suspension of the plaintiff before the mayoral hearing did not justify the award of punitive damages.

STATUTES — VETERANS' PREFERENCE ACT — EMPLOYMENT SUSPENSIONS — HEARINGS — DUE PROCESS.

A military veteran employed by the state or a political subdivision of the state may not be suspended from employment until after a

hearing is conducted before the appropriate public official desig-
nated in the veterans' preference act; a deprivation of this right to a
presuspension hearing, if de minimis, does not constitute a viola-
tion of due process (US Const, Am XIV; MCL 35.402; MSA 4.1222).

*Amos E. Williams*, for the plaintiff.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by
*John H. Willems*), for the defendants.

Before: O'CONNELL, P.J., and WHITE and SAAD, JJ.

O'CONNELL, P.J. Defendants appeal as of right from
an order denying their motions for judgment notwith-
standing the verdict, a new trial, and remittitur. We
reverse. This case requires us to review the provi-
sions of the veterans' preference act (VPA), MCL
35.401 *et seq.*; MSA 4.1221 *et seq.*, and their relation-
ship to the Due Process Clause of the United States
Constitution, US Const, Am XIV.

I. INTRODUCTION

The parties do not dispute the essential facts of this
case. Plaintiff began his employment with the Detroit
Police Department in 1969, and ultimately rose to the
rank of inspector. On July 12, 1994, between 5:30 A.M.
and 7:00 A.M., plaintiff was on duty at his regular
assignment in the field duty section. During that
period, he received notice of an incident involving a
barricaded gunman in the 9th Precinct, which was
under his jurisdiction as field duty officer. Plaintiff
did not respond to the incident, although he was in
radio contact with the officers at the scene. As a
result of plaintiff's failure to report to the scene of the
incident, he received a charge of neglect of duty
under department regulations. On October 25, 1994,

the Police Trial Board held a hearing on the matter. Plaintiff had legal representation at the hearing and called witnesses on his behalf. The trial board rendered its decision on November 2, 1994, and found that plaintiff had neglected his duty as field duty inspector when he failed to proceed to the location of the barricaded gunman and assume tactical command. As a penalty, the trial board assessed a three-day suspension and a loss of twenty-four hours of pay and benefits. Plaintiff submitted a request for a veterans' preference hearing in a letter dated November 29, 1994, to both defendant McKinnon and Mayor Dennis Archer, wherein he demanded a hearing before the imposition of his suspension.

On November 30, 1994, defendant McKinnon ordered plaintiff's supervisor to impose the three-day suspension. Plaintiff received his veterans' preference hearing on July 20, 1995, before Mayor Archer. The process concluded on January 19, 1996. Both sides had legal representation and a full opportunity to present witnesses and evidence. At the conclusion of the January 19, 1996, hearing, Mayor Archer rendered his decision upholding the disciplinary action. The parties stipulated that the period of delay between the plaintiff's request and the commencement of hearings was due solely to scheduling problems on the part of all concerned. Plaintiff made no claim that the city intentionally delayed his veterans' preference hearing.

## II. PROCEDURAL HISTORY

In December 1994, plaintiff filed a complaint against the city of Detroit, as well as Police Chief Isaiah McKinnon and Police Commander David Sim-

mons, in both their individual and official capacities. Plaintiff alleged that he was entitled to a hearing, pursuant to the VPA, before the imposition of his three-day suspension, and that defendants failed to provide him with one. He also alleged that defendants retaliated against him for engaging in union activity. Plaintiff contended that defendants' failure to timely provide him with a hearing, along with their retaliation against him for his union activity, violated his rights to free speech and association, as well as procedural due process, contrary to the federal and state constitutions.

Thereafter, plaintiff moved for partial summary disposition, MCR 2.116(C)(10), arguing that with the exception of damages, no genuine issue of material fact existed and that he was entitled to judgment as a matter of law. Defendants filed a cross-motion for summary disposition, arguing that plaintiff's claim that he was disciplined for his union activity had no foundation in the record. Defendants further contended that the VPA did not grant plaintiff a right to a presuspension hearing and that, even if it did, their failure to provide him with one did not constitute a violation of due process. Defendants also argued that the individual defendants had no responsibilities under the act and therefore could not be held liable for its violation. Finally, defendants asserted that McKinnon and Simmons were entitled to immunity from suit.

The trial court granted plaintiff's motion "only to the extent that this Court finds that failure to provide a qualified veteran a full hearing under the Veterans Preference Act, MCL 35.402 [MSA 4.1222], prior to imposition of discipline constitutes a denial of due

process . . . ."[1] The court denied defendants' motion for summary disposition. Defendants applied for leave to appeal this order, which this Court denied, citing the failure to persuade the Court of the need for immediate appellate review.

Defendants thereafter filed another motion for summary disposition in which they raised essentially the same arguments, except that they also contended that plaintiff could not pursue a claim for damages against the individual defendants under 42 USC 1983 because plaintiff was only entitled to the relief specified in the VPA itself—the right to require the mayor to hold a hearing. The trial court denied defendants' motion for summary disposition and concluded that plaintiff was entitled to a jury trial on the issue of damages.

Before trial, defendants raised a number of motions that we need not discuss here. The jury determined that plaintiff did not suffer any actual damages. The jury did, however, assess $1 in nominal damages against both the city and defendant McKinnon, and $100,000 in punitive damages against defendant McKinnon alone.

Defendants brought motions for judgment notwithstanding the verdict, a new trial, and remittitur, which the trial court denied. In May 1998, the trial court entered an order staying the proceedings pending defendants' appeal to this Court. In October 1998, the parties stipulated to dismiss defendant Simmons.

The primary issue for our consideration in this case is whether the trial court erred in concluding as a

---

[1] The record is unclear; however, at this point plaintiff apparently ceased to pursue his claim that defendants retaliated against him for engaging in protected union activity.

matter of law that defendants violated plaintiff's right
to procedural due process. We review de novo a trial
court's grant or denial of a motion for summary dis-
position. *Spiek v Dep't of Transportation*, 456 Mich
331, 337; 572 NW2d 201 (1998). Because we find no
due process violation in this case, we hold that the
trial court erred in granting plaintiff's motion for par-
tial summary disposition.

The relevant portion of the VPA, MCL 35.402; MSA
4.1222, provides:

> No veteran or other soldier, sailor, marine, nurse or mem-
> ber of women's auxiliaries as indicated in [MCL 35.401;
> MSA 4.1221] holding an office or employment in any public
> department or public works of the state or any county, city
> or township or village of the state, except heads of depart-
> ments, members of commissions, and boards and heads of
> institutions appointed by the governor and officers
> appointed directly by the mayor of a city under the provi-
> sions of a charter, and first deputies of such heads of
> departments, heads of institutions and officers, shall be
> removed or suspended, or shall, without his consent, be
> transferred from such office or employment except for offi-
> cial misconduct, habitual, serious or willful neglect in the
> performance of duty, extortion, conviction of intoxication,
> conviction of felony, or incompetency; and such veteran
> shall not be removed, transferred or suspended for any
> cause above enumerated from any office or employment,
> except after a full hearing before the governor of the state
> if a state employee, or before the prosecuting attorney if a
> county employee, or before the mayor of any city or the
> president of any village, or before the commission of any
> such city or village operating under a commission form of
> government, if an employee of a city or village, or before
> the township board if a township employee, and at such
> hearing the veteran shall have the right to be present and
> be represented by counsel and defend himself against such
> charges: Provided further, That as a condition precedent to
> the removal, transfer, or suspension of such veteran, he

shall be entitled to a notice in writing stating the cause or causes of removal, transfer, or suspension at least 15 days prior to the hearing above provided for, and such removal, suspension or transfer shall be made only upon written order of the governor, the prosecuting attorney, the mayor, commission, or the township board: Provided, however, That where such veteran has been removed, transferred, or suspended other than in accordance with the provisions of this act, he shall file a written protest with the officer whose duty under the provisions of this act it is to make the removal, transfer, or suspension, within 30 days from the day such veteran is removed, transferred, or suspended; otherwise the veteran shall be deemed to have waived the benefits and privileges of this act: Provided, however, Said hearing shall be held within 30 days of filing such notice: Provided further, That the mayor of any city or the president of any village or the commission of any such city or village operating under a commission form of government may refer any protest where a veteran is removed, transferred, suspended or discharged, to the legal department of such city or village for a hearing. The legal department shall act as a fact finding body and shall have the power to examine witnesses, administer oaths and do all those things which the mayor could do hereunder: Provided further, That the findings shall be transmitted to the mayor in writing by the legal department, whereupon the mayor shall examine the transcript of the hearing and make a decision based on the transcript thereof: And provided further, That where such veteran has been reinstated to his employment upon the written order of the governor of the state if a state employee, the prosecuting attorney if a county employee, the mayor of any city or the president of any village or the commission of any such city or village operating under a commission form of government, or a township board if a township employee, or by an order of any court of competent jurisdiction, then such veteran shall be entitled to receive compensation for the time lost from date of such dismissal or suspension to the date of reinstatement at the same rate of pay received by him at the date of dismissal or suspension.

The VPA "was enacted for the purpose of discharging, in a measure, the debt of gratitude the public owes to veterans who have served in the armed services in time of war, by granting them a preference in original employment and retention thereof in public service." *Valentine v Redford Twp Supervisor*, 371 Mich 138, 145; 123 NW2d 227 (1963). The act entitles a veteran to notice and a hearing before his employer may take any action against him with respect to his employment. *Jackson v Detroit Police Chief*, 201 Mich App 173, 176; 506 NW2d 251 (1993). The act converts at-will public employment positions into ones that are terminable only for just cause. *Id.*

The failure of a defendant to comply with the procedures contained in the VPA may support a due process claim. See *Egan v Detroit*, 150 Mich App 14, 21; 387 NW2d 861 (1986). A plaintiff's due process claim in a case such as this depends on him having a property right in continued employment. *Cleveland Bd of Ed v Loudermill*, 470 US 532, 538; 105 S Ct 1487; 84 L Ed 2d 494 (1985). In *Loudermill*, the Court determined that an Ohio statute providing that classified civil service employees could not be dismissed except for misfeasance qualified as a property interest in continued employment. *Id.* at 538-539. The VPA is in the nature of civil service law, *Brand v Detroit Common Council*, 271 Mich 221, 227; 261 NW 52 (1935), and because it converts at-will public employment into just-cause employment, *Jackson, supra* at 176, it granted the plaintiff a property right in continued employment. Once a state legislature confers a property interest in public employment, the employer may not deprive the employee of the interest without "appropriate procedural safeguards." *Cleveland Bd of*

*Ed, supra* at 541. Generally, notice and the opportunity for a hearing must precede the deprivation of the property interest. *Cleveland Bd of Ed, supra* at 542. However, the pretermination hearing, though necessary, need not be elaborate, and something less than a full evidentiary hearing is sufficient. *Id.* at 545.

"Analysis of what process is due in a particular proceeding depends on the nature of the proceeding and the interest affected by it." *Klco v Dynamic Training Corp*, 192 Mich App 39, 42; 480 NW2d 596 (1991). Turning to the source of plaintiff's claim, the VPA itself, the act provides that the "veteran shall not be . . . suspended . . . , except after a full hearing before . . . the mayor . . . ." MCL 35.402; MSA 4.1222. Defendants argue that plaintiff's postsuspension hearing satisfied the act's requirement. Defendants rely on *Adams v Detroit*, 184 Mich App 589, 597; 458 NW2d 903 (1990), where this Court expressed strong disagreement with the plaintiff's argument that the VPA required his employer to hold a full hearing before his termination. *Id.* However, another panel of this Court, in *Jackson, supra* at 177, n 1, rejected the conclusion in *Adams* that the employer need not hold a hearing before taking action. We are bound to follow *Jackson*, which was issued after November 1, 1990. MCR 7.215(H)(1). Moreover, *Jackson* conforms with the plain language of the act, which states that a "veteran shall not be removed, transferred or suspended for any cause above enumerated from any office or employment, except *after* a full hearing . . . ." MCL 35.402; MSA 4.1222 (emphasis added). See also *Jackson, supra* at 177.

In arguing that the postsuspension hearing was sufficient to satisfy the statute, defendants also empha-

size language contained in the VPA providing that
where a

> veteran has been removed, transferred, or suspended other
> than in accordance with the provisions of this act, he shall
> file a written protest with the officer whose duty under the
> provisions of this act it is to make the removal, transfer, or
> suspension, within 30 days from the day such veteran is
> removed, transferred, or suspended; otherwise the veteran
> shall be deemed to have waived the benefits and privileges
> of this act . . . . [MCL 35.402; MSA 4.1222.]

The quoted language does not support defendants'
argument. First, this Court has already concluded in
*Jackson, supra* at 177, that an employee is entitled to
a hearing before the adverse employment action.
Moreover, the quoted language does not give employ-
ers the option to hold the hearing after the suspen-
sion. Rather, the language is akin to a preservation
requirement in that the employee must either file a
written protest within the specified period or waive
the privileges of the VPA. See, e.g., *Cook v Jackson*,
264 Mich 186, 188; 249 NW 619 (1933). Further, to
allow the employer to hold the hearing after the
adverse employment action would render nugatory
the language stating that the "veteran shall not be . . .
suspended . . . , except after a full hearing . . . ." This
Court avoids any construction that would render any
part of a statute surplusage or nugatory. *People v
Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1
(1999).[2]

---

[2] We also note that the VPA, in MCL 35.401; MSA 4.1221, states that the
civil service act for counties having a population of one million or more,
MCL 38.401 *et seq.*; MSA 5.1191(1) *et seq.*, prevails in the face of any con-
flict between the two acts. Therefore, the quoted language contemplates

Defendants also argue that the number of employees that the mayor must oversee makes following the mandates of the VPA administratively impossible. This argument is without merit. Defendants presented no evidence on this issue during the proceedings below. Moreover, the act itself permits the mayor to "refer any protest where a veteran is removed, transferred, suspended or discharged, to the legal department of such city . . . ." MCL 35.402; MSA 4.1222. See also *Egan, supra* at 16.

Notwithstanding the foregoing, we conclude that defendants' deprivation of plaintiff's right to a presuspension hearing was de minimis and therefore did not rise to the level of a due process violation. In *Carter v Western Reserve Psychiatric Habilitation Center*, 767 F2d 270, 272 (CA 6, 1985), Carter sued his employer pursuant to § 1983, claiming that his employer violated his right to due process in failing to provide him with a presuspension hearing in accordance with a civil service statute. The Sixth Circuit Court of Appeals acknowledged that Carter's two-day suspension without pay constituted a deprivation of property "in theory." *Id.* at 272, n 1. However, the court stated that "not every such deprivation is significant enough to trigger the protections of the due process clause." *Id.* The opinion concluded that under the facts of the case, "Carter's suspension was in the manner of routine discipline. We regard this deprivation as de minimis and not deserving of due process consideration." *Id.* In *Gillard v Norris*, 857 F2d 1095, 1098 (CA 6, 1988), the court cited *Carter* and concluded that

that an employee may be removed in accordance with the civil service act and yet still be allowed to proceed under the VPA.

the plaintiff's routine three-day disciplinary suspension did not trigger a violation of due process.

In the present case, plaintiff's suspension was for three days. Although the trial board also recommended that the suspension be without pay, plaintiff made no claim for lost wages or benefits. He received a hearing before the Police Trial Board, and ultimately received a veterans' preference hearing after the imposition of his suspension. Under these circumstances, we conclude that the deprivation of plaintiff's right to a presuspension hearing was de minimis and therefore did not rise to the level of a due process violation.

Defendants raise a number of other issues on appeal. Because we have concluded that plaintiff did not suffer a violation of his right to procedural due process, we need not address defendants' remaining issues.

Reversed. We do not retain jurisdiction.

SAAD, J., concurred.

WHITE, J. (*concurring*). Because I conclude that defendants' suspension of plaintiff in the instant case before the mayoral hearing did not justify the award of punitive damages, I concur in the majority's decision to reverse.